The final case this morning is number 17-1933, Broad Ocean Technologies, LLC v. Nidec Motor Good morning, your honors. If it pleases the court, I'm Steve Meyer, representing Appellant Broad Ocean. Today I will address three separate errors made by the Board, each of which would warrant the Board's judgment that BFIS does not anticipate claims 7-13 to be vacated and remanded. First, the Board erred by failing to consider Petitioner's evidence of record, particularly paragraph 49 of Dr. Sidman's declaration. Let me tell you what my problem is here. I have read the patent. I have read the prior art. I do not understand from the briefs what is going on here. For me to determine whether there is an invalidity issue here, I need to understand what the patent is claiming and what BFIS is showing in Figure 6. The patent doesn't give you an example of the kind of lookup table that is being claimed. What do you understand that lookup table to be like? How is it used? What is shown on it? Are they trying to figure out what speed to run this drop-in loader at? What's going on? I agree with you that the challenged 09-2 patent specifications description of this embodiment is very poor. It is limited to just two sentences, really just one. By way of background, the 09-2 patent specification describes a methodology for using a newer, more efficient variable speed motor as a direct drop-in replacement for the older, less efficient fixed speed PSC. What is the idea here in this patent and in BFIS? What are you trying to figure out? The speed at which to run the drop-in loader? To limit the speed? Yes, to control the speed and the torque. They are different motors. The old motors had fixed speeds. You could only operate them at either two, four, or maybe six speeds top for your air conditioner. The concern here is that with the drop-in motor it would run too quickly? It wasn't very efficient. Also, its operation was limited by its design, which has what they call taps on the coils that limits the speed that it can go. Drop-in motor? The drop-in motor is a variable speed motor. It's infinitely variable in effect, is it not? Correct, yes. What's the concern? That the drop-in motor would run too fast? Run too fast, yes. How does this lookup table help you to ensure that it does not run too fast? Are you looking to enter a particular speed into the table and determine, is that going to run too fast? Yes, that is what BIFAS is doing. BIFAS is concerned because... Is it your position that BIFAS discloses the on-the-fly embodiment? It discloses both on-the-fly and storing torque tables. Okay, so if that's true then, how do you respond to the PTAB's determination that that's inconsistent with an inherency argument regarding Thompson? Well, they didn't consider Thompson, and that was one of our arguments. They absolutely refused to consider Thompson. We included Thompson in our petition and in discussing this ground, and also in our claim charts to explain but not expand on BIFAS. But look at figure six. Help me understand what I have in front of me. How do I use BIFAS? What am I trying to figure out? What the speed of the variable speed motor should be in the drop-in? Yes, what happens, BIFAS can possibly run too fast. It runs faster than the system was designed for with the old motor. And when it runs too fast, it could cause damage to the system. Now, where it's too fast is in between what is known as the breakdown speed, which is the speed that corresponds to the greatest amount of torque that the old replaced motor could have generated, and what is known, and that is in this chart, it's defined to be 1,050 RPM. The 1,050 horizontal line. That's the breakdown speed. That's the breakdown speed, yes. And the 1,200 horizontal line, that's the no-load speed. The no-load speed, which is if you have no force, nothing pushing back on, let's say, the fan that the motor is turning. So what this is telling you is that if you run it over 1,050, the amount of torque declines and eventually reaches zero. Is that correct? No. What it's saying is that if you're over 1,050, you should reduce the amount of torque that it's calling for by the line that veers over to the left. Right. So the control circuit is going to basically order that the torque demand get ratcheted down. Correct. Yes. And that's what these curves represent? Correct. Yes. So these four vertical lines, do those basically represent, I don't know, different types of systems that you might drop in a motor? No. These are torque speed settings where you don't have to do anything to the torque because you're less than the 1,050. Right. I'm just asking, why are there four lines? One vertical line at 20, 40, 60? Because it's the percent torque demand. Yeah, but, well... So it would be 100% of the maximum. I guess one way of... So these four lines here are showing that at speeds of 1,050 and below that you won't have a problem, basically. Correct. Yes. If I could just take a step back to explain the correlation, let's say, between speed and torque. Let's say you're driving in your car and it's 50 miles per hour. That'll be our speed in terms of RPM, let's say, 50 miles an hour. Now, if you're on a flat surface... Yes. If you're on a flat surface, the engine has to work, let's say, medium amount. If you're climbing up a mountain, let's say, to go skiing and you want to maintain 50 miles per hour, you have to push down on the gas water and the engine is straining. And then the engine is producing more torque even though you're at the same speed. So that would be like if you're at 1,000 and you go across the horizontal line. 100%, let's say, would be going up the mountain. 50% would be driving on a flat road. And let's say you're in the mountains, you went skiing, and now you're coming home. You're going downhill. There's not much strain on your car's engine doing 50 miles an hour downhill. You may not even have to press much on the gas at all. So that corresponds to this torque percentage. I'm going to take you back to Thompson. Yes, okay. Now, Thompson... Yeah, and I want to take you back there because I asked you about it and your response was that the board didn't discuss Thompson at all. Well, they didn't let us rely upon Thompson. Well, that's different than what you said because the question I asked was whether it was considered. And it was considered. They just wouldn't accept it. They wouldn't accept it because they said that... I'm looking at Appendix 26. Appendix 26, okay. I used the word regarding Thompson. Okay, yes. They said that Thompson would not be considered because we didn't rely upon Thompson as a 103 reference in connection with BIFAS. And that we didn't rely upon it in one of the three ways that you're allowed to use extrinsic evidence in the context of 102B. And our position is, oh, yes, we did. We did rely upon it in each one of those three ways. For what purpose? Well, we relied upon... Storage? of an ECM motor in the form of a torque table, which has speed and torque components. So you can look one up, look up speed, get a torque, vice versa. I guess if... Is it BIFAS? Is it BAFIS? We have been calling it BIFAS. Okay. If the board found that BIFAS doesn't disclose storing a torque curve in a memory, then do you agree that Thompson is irrelevant? Yes, but it does. So the real debate is, do we read BIFAS as disclosing the storing of a torque value curve in its motor control? Yes, but I think that part of the problem is that we submitted evidence with respect to the construction of paragraph 11 of BIFAS. Particularly, it was paragraph 49 of Dr. Sidman's declaration. Also, his redirect testimony, deposition testimony. We relied upon it in two places. One, for showing that BIFAS itself, under ordinary 102B purposes, is invalidating. And also for an argument under Kenamental. Put aside Kenamental. What is it that the lookup table would show you in the 092 patent? It's not actual numbers, right? It's hypothetical numbers or theoretical numbers. The 092 patent, they have one embodiment that's described in minute detail that says that the torque can be adjusted by putting in a small little power on one of five lines. IN-135. There's some lookup table that's stored in memory in the 092 patent. What does that look like? It doesn't say. Does it look like what's on columns 15 and 16? Okay, it's 15. Standard motor, you've got five options. XYZ motor, you've got another five options. This is the embodiment that I was describing. If you see these numbers IN-1 through IN-5, those correspond to power input lines, which are shown on figure 6, which is at appendix page 41. There's IN-1 through 6. If there's a slight power in there coming in, it's sensed by the circles that go around the lines, and it determines which one of those lines are powered. Based upon that, it reduces the torque. You're going into too much detail for my purposes. I just need to know for a picture in my mind. Is your patent disclosing that this is the kind of information that would be stored in the memory? I don't think that it does. It says that IN-1, there's no way to pull it. It's just a yes or no. No, because you cannot access the torque numbers that are provided on here with IN-1, because IN-1 through IN-5 is not defined in this separate embodiment. It's limited to the other embodiment. If IN-1 was a speed, yes. Yes, it would. That would be the same exact thing as in Thompson and what BIFAS tells you to do. I'm not understanding. What is it under the 092 patent that is stored in memory and that is accessed? What this says is, it may select a torque slash speed table number one. Where are you, please? It's on column 17, line two and three. It says torque slash speed table. That is what is in Thompson. A table where you've got a torque value associated with a speed value. This says that you could do that, but the tables shown on columns 15 and 16, Judge Chen, you have a torque value and you have an IN-1 value through IN-6 or IN-5. There's nothing that says in this second embodiment that IN-1 through IN-5 is a speed. The only thing that says it can be a speed is column 17, line two, select torque slash speed table number one. You've got a problem here because you're not explaining the technology in a way that it's easy to understand. The burden here is on you to show anticipation. Unless we can understand that BIFAS and the 092 patent are doing the same thing, we can't find anticipation. We're sitting here right now. I do not understand what the 092 patent enables you to do, but the lookup table is designed to do and how that relates to BIFAS. You have not explained that in your brief. If at the end of the day we're left here not understanding what you're talking about, you're going to lose. The table is the way that a patent owner has described these tables, that they are speed torque tables and that there is a speed. What are you trying to do in the 092 patent? What does the table look like? What are you looking up and what does the table tell you? The table tells you that when you look up a speed, it's going to tell you to reduce the torque by a certain amount. You have a standard motor, which would be on column 15, and it has torque values for each IN1 through IN5. Now, if IN1 is a speed, if you pull up the standard motors chart and you're at speed IN1, your torque is going to be 30 inches. If you pulled up table number 2, which is for the XYZ motor, if you are at speed number 1, you go to the torque speed chart and you see that the torque setting has to be 26.1. If you had pulled up the speed load, the speed torque table for the ABC motor, which is the second set of charts in column 16, and you have a speed value of IN1, it tells you that you should be operating at a torque of 28.5 inches. Does BIFAS figure 6 teach the same thing? Yes, it does. How? Okay. What the claim says is selecting a torque table associated with the adjustment factor and the torque table including alternate torque settings. That's what the claim requires. Now, if we go to BIFAS, and we're at speed, let's say, 1100, and we're at a 20% torque demand, it says that the torque should be not what is shown on the vertical line, but just over to the left. So it's reducing the torque by that little much. And if you go to the 50% torque demand and go up to 1100 RPMs, the torque is shifted over a little bit more to the left. So you're getting a larger reduction in torque. And the same thing is true for the 75% torque demand line. up to 1100. And if BIFAS senses that the replacement motor is rotating at 1100 RPMs, it's going to reduce the torque from 75% over to, it looks like, about 70%. So is the difference that the 092 gives you an actual number? If you enter a speed, it gives you an actual number of torque, whereas in BIFAS you have to look at this chart and figure out where that little box to the left is at 1100? Yes, in the graphical depiction, but when it's stored in the computer as a table, it will be identical to the tables that are in the 092 patent. How do we know that? Because that is the way that a lookup table works. Okay. And that is what Thompson says, and Thompson explains what a lookup table is. And so does... The other challenge you have here is that the board read BIFAS and concluded that what is actually being stored in memory is not these curves illustrated on figure six or a lookup table with, I don't know, 5,000 data points that represent all these curves, but instead is storing the key characteristics that you would plug into a formula to calculate a desired torque value on the fly, right? The reason that they did that was that they ignored our evidence. Basically, the position we're taking now is that it's a procedural problem, what the board did, and that it should be remanded so that they can consider the evidence... What authority supports your proposition that the PTAB's determination that Thompson wasn't asserted rises to the level of a due process violation? We believe that it violates Section 554C1 of the Administrative Procedure Act. A due process violation? It's... We were deprived of our rights of having our evidence considered under 554C1. In other words, you're not citing it in the authority. That is our authority and also the case law that we cited. Maybe we used a wrong choice of words, due process. Some of the case law has used that phrase, due process. It was that we were deprived of the consideration of our evidence of record in violation of Section 554C1 of the APA. And that evidence is a paragraph... I think we're way over time. We'll give you two minutes for rebuttal. Thank you. For now. Thank you, Your Honor. May it please the Court. The issue before the board was very narrow and well-defined. The board was asked to determine whether the BFIS reference disclosed storing alternative torque values in a memory. The board made a factual finding that BFIS, in fact, did not disclose that claim element. That factual finding was supported by substantial evidence and they don't even dispute it. Explain to us why that's supported with substantial evidence. If we look at BFIS Figure 6, isn't that the same information that the 092 says is to be stored in memory? Well, there were two parts of BFIS that Petitioner focused on. Could you just answer Judge Dyke's question? Isn't it fair to say that Figure 6 is a representation of a torque curve? It is unquestionably a representation of a torque curve. The question is, how is that developed? How is that torque curve developed? It is the same information, then, that is being discussed and referred to in the 092 patent claim, the torque value. Yes, it's the same information. The question is, how do you get the information? In the 092 patent, Claim 7 requires that that information be stored in a table in a memory. That was the board's claim construction and it's undisputed on this appeal. BFIS discloses that this Figure 6 is illustrative of the process that's described in Figure 5. Figure 5, which can be found in 814 in the appendix... Does BFIS disclose that Figure 6 is stored in memory? No. Is that the problem? That's the problem. BFIS discloses that the key characteristics of a motor that's going to be emulated are stored in a memory. Those are the things that get plugged into... So if BFIS Figure 6 were stored in memory, it would anticipate? It would. If BFIS Figure 6 were stored as a plurality of torque data points in memory, it would anticipate. But BFIS says... Can you repeat that qualification? If Figure 6 were stored in memory, it would anticipate? I believe if Figure 6 were stored in memory, it would anticipate. But BFIS does not say that it stores Figure 6 in memory. It says... There's only two things it says about it. It says in Paragraph 11, which is the brief description of Figure 6, that... Figure 6 is a chart illustrating an induction motor speed-torque curve that is programmed into a memory of an ECM. The board said the word programmed is ambiguous because programmed could also mean what BFIS actually discloses, which is that the key characteristic points that are going to be used in the equation are programmed into the memory. And BFIS discloses that that's what's... In other words, it's not variable in the same manner. It is not. It is not, in fact. In fact, probably BFIS is more robust than what is found in the 092 patent, is storing discrete points, five of them per table, five or six of them per table, whereas what BFIS is disclosing is an on-the-fly calculation, which is disclosed in Figure 5 of BFIS, where it takes the speed of the motor at that instant in time, and it modifies the torque demand based on the speed of the motor and a function of the key characteristic points which were stored in the memory. But what I'm understanding you to be saying is that what you said explicitly, if Figure 6 were stored in memory, it anticipates. So why doesn't 11 show that Figure 6 is stored in memory? Because 11 says that the speed-torque curve is programmed into a memory, which the board found was ambiguous, and then the board found that that was clarified when you get to Paragraph 36, which is the detailed description of what's happening in Figure 6. And the detailed description shows that what Figure 6 is, is just illustrating how the equation works in two different options for a motor during normal operation. Figure 6 is illustrative of how this thing would be modified by the equation. Figure 6 itself, the discrete data points of Figure 6, are not stored in the memory, and that's what the board found as a matter of fact. So what you're saying is that only the formula that gets you to Figure 6 is stored in memory and not Figure 6 itself. That's correct. And then the special characteristic data that you would plug into the formula. That's right. The special characteristics are specific embodiments. So, for example, in Figure 6 at the bottom, the specific embodiment is N, which is one of the special characteristics, is 2.5. No load speed is 1,200. Breakdown speed is 1,050. Those are the key characteristic points that BIFAS says are stored in the memory. And Option 1 and Option 2 in Figure 6 are the algorithms that you use to calculate whatever the desired torque speed is. Exactly. And if you look at Figure 5, Option 1 and Option 2 are what goes into Block 206. Block 206 says calculate the new torque demand, set it equal to the desired torque times a function of the speed of the motor, that's the instantaneous value when the motor is running, breakdown speed, no load speed, and the exponent, which are the key characteristic points that are actually stored in the memory. BIFAS discloses simply on-the-fly calculation, not pre-calculation and storage of discrete points in a memory. That's what the board found, as a matter of fact, and BroadOcean does not challenge on this appeal that there wasn't substantial evidence supporting the board's factual findings. Okay, but what about Paragraph 36 of BIFAS, which refers to Figure 6. It says it's a chart, and it says it might be stored, for example, within the memory of an ECM control circuit. Isn't that disclosing that Figure 6 might be stored? No, and as the board found in parsing the language, both of Paragraph 36 and in considering the testimony from the experts, the board found that what Paragraph 6 says is that the key characteristic points. Paragraph 36 says, in the second sentence, Chart 250 is illustrative of key characteristic points of an induction motor speed torque curve that might be stored. The board found that that meant that the key characteristic points are what is stored, not the data points that are reflected in the chart itself. Or another way of putting it is the board basically found the reference to be ambiguous, and so therefore the petitioner did not meet its burden of proof that this reference, in fact, by preponderance of evidence, teaches the idea of storing the speed torque curve itself in the memory. Exactly. That's exactly what the board found. Because it could perhaps just as equally be understood as storing nothing more than the key characteristic points that would be used in calculating torque demand. And the board went a little further. The board found that it was more likely that, in fact, it disclosed storing the key characteristic points and not the data points in the memory. What page of the board's opinion is that? The discussion starts at page 12 of the appendix, Your Honor, where they first address Paragraph 11 and show to explain why it is that Paragraph 11 is ambiguous. Then from pages 13 through probably 18, the board sets forth its reasoning as to why it is that between looking at Paragraph 5, the descriptions in Paragraph 35 and 36, and considering the testimony that was submitted. Where exactly does the board say that Paragraph 36 doesn't show that BIFAS Figure 6 is stored in memory? At the top of page 13 of the appendix, Your Honor, the paragraph that begins second, we agree with Pat and Owner that BIFAS expressly clarifies the ambiguity when Figure 6 is actually described in detail in the specification. As Pat and Owner asserts, BIFAS makes it clear that Figure 6 is a plot of values derived from key characteristics, which are motor parameters of the emulated motor. No, that's not answering my question. My question is, where do they say that Paragraph 36 of BIFAS doesn't disclose storing Figure 6 in memory? Well, I guess what they found, Your Honor, was that Paragraph 36 shows that BIFAS shows storing the key characteristic points and not the data. So they don't say specifically that BIFAS doesn't disclose storing Figure 6? Give me a moment, Your Honor. Okay. So you have to string it together at page 15. At the bottom, they say, Third, Pat and Owner asserts that Figure 5 of BIFAS confirms that the outputs from as a torque curve or in a lookup table, citing to our brief. Then they reproduce Figure 5, and after discussing it on page 17, they say this reasoning is persuasive. We disagree with Petitioner's position that Figure 5 can't reasonably be used to inform an understanding of Figure 6. Well, but that's not my question. My question is, Paragraph 36 of BIFAS seems to talk about storing Figure 6 in memory, which you agree would be anticipatory. Where does the Board address that question? I guess you would have to say in passing. That's the whole point behind this long explanation by the Board. They're discussing each of the reasons that Petitioner says that that's what's happening, and they're seriatim knocking each one of those down. I guess it quotes Paragraph 36 in its entirety at page 810. It really seems to look at the bottom of 17 and the top of 18. It says a person of ordinary skill in the art would therefore understand that Figure 6 is simply a specific embodiment of an induction motor speed curve, but discern insufficient, unequivocal testimony in support of that contention. But it seems to me that that's what you've admitted, that Figure 6 is a specific embodiment, and if it were stored in memory, that would satisfy the claim limitation. The Board, after reciting Paragraph 36, addresses on page 11. It says, Pat Noner reads the disputed sentence of Paragraph 36 with a more narrow scope for the prepositional phrase, etc., of an induction motor speed torque curve with key characteristics so that the restrictive clause that might be stored within a memory of an ECM control circuit further limits the key characteristic points. Under this reading, the key characteristic points are not torque values. BFIS fails to disclose a torque table consistent with the construction advanced by Petitioner and adopted herein because the torque values themselves are not stored in a memory connected to the motor. Mindful that Petitioner bears the burden of proving a proposition of unpatentability, we determine that Pat Noner's position is more persuasive. So that's where they expressly say that they agree with our interpretation of Paragraph 36. And it's based on weighing all the evidence that then is discussed in detail as it follows. Okay, anything else? Okay, thank you, Mr. Brown. Mr. Meyer? Yes. I would like to direct your attention to Paragraph 49 of our expert's report, which is at APX 947. I'm sorry, 9? 947. This is our evidence regarding the storing of the Figure 6 curve. Also, we cite it to deposition testimony as well. Now, if you then turn to Page 12 of the final written decision, which is Appendix Page 12, it says that Petitioner relies upon attorney argument with insufficient supporting evidence. See these petition pages. We didn't cite to this testimony on those pages. We cited to it on the next page, Page 27 and 37. And then with the parenthetical to Pearson, it says, unsupported attorney argument in a brief cannot take the place of evidence. Therefore, they're implying and they're taking the position that we didn't present any evidence at all on this point regarding Paragraph 11. We did. They just didn't consider it. That's the error that we're pointing to. And under this court's precedence, a substantial evidence review requires that the board had examined the record as a whole, taking into account both the evidence that justifies and detracts from the board's findings. You're talking about Paragraph 49 of Dr. Sidman's declaration, right? Yes. What age is that? 8947, 8948. At age 25, the board cites to Paragraph 49, doesn't it? When it points out, quote, petitioner relies on testimony by Dr. Sidman that we considered and weighed in the context of the full disclosure of BFIS, including the less ambiguous statements that appear in Paragraph 36C, Paragraph 49. Yes, that is the decision on rehearing. When we pointed out that it wasn't considered in the final written decision, and they came back and said, oh, yeah, we did. But that doesn't provide this court with a roadmap as to the path that the board was taking. They just said, oh, yeah, we did. They didn't explain how they considered it. It's never mentioned in the final written decision. And also, if I could… What's in Paragraph 49 that's so illuminating? Let's see. It talks about Paragraph 11 and 36 of BFIS, and then… Well, it gives a quick pinpoint site to it, but it doesn't do a treatment of the language of those paragraphs. Each of the curves for Option 1 and Option 2 present the plurality of torque values that may be stored within a memory of an ECM controlled circuit. And that's equivalent to what they say. That doesn't answer the question of whether Figure 6 is actually stored in the memory or not. It's just an interpretation of what the content of Figure 6 itself illustrates. But if you look at Paragraph 11 of BFIS, it says, Figure 6 is a chart illustrating an induction motor speed curve that is programmed into memory. And then if we go to Paragraph 36, the second sentence, it says, Chart 250 is illustrative of key characteristic points of an induction motor speed torque curve that might be stored, for example, within a memory of an ECM controlled circuit. The word that is next to the speed torque curve, not the characteristic points. What are we supposed to do with language that's in the abstract and the brief description of the invention that says things like, the method includes receiving at the ECM a desired operating torque, accessing induction motor operating characteristics stored within the ECM, and calculating a new torque demand if a speed associated with the desired operating torque is greater than a breakdown speed of the induction motor? It says essentially the same thing at the brief description of the invention and then says the same thing at Paragraph 32. I mean, the point I'm trying to make is that the board has to make a reading of this reference. And they're the ones making the fact finding. And I don't know if we can say that it's totally unreasonable based on reviewing the reference as a whole, where they said that what is being described here is not storing the entire curves into a memory, but it's in fact storing certain characteristics that you would then use in a formula to calculate a torque demand on the fly. It is our position that if the board had considered the final written decision, the evidence that we submitted in our petition and in our reply, the deposition testimony of our expert, Dr. Sidman, as well as his declaration testimony and Thompson, then they would have come to a different conclusion. The fact that they didn't shouldn't in order to our detriment, we argued for this. The board violated Section 554C1. There is not substantial evidence. And I would like to point out one last thing in concluding. If you go to Thompson, and at appendix page 988, at column 5, lines looks like about 38 to 41, it says in the present invention, the ICM microprocessor controls the speed of the motor by determining torques from a lookup table pre-programmed within the ICM microprocessor system. Then if we go to... Okay, Mr. O'Reilly, I think we're out of time. It uses the word stored. No, no, no. We've got to stop. I thank both counsel, the case is submitted. That concludes our session for this morning. The honorable court is adjourned until tomorrow morning at 10 a.m.